UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GERARD C.,<br><br>　　　　　　　　Plaintiff,<br><br>v.<br><br>MARTIN O'MALLEY, Acting Commissioner of Social Security,[1]<br><br>　　　　　　　　Defendant. | Case No.: 23-cv-00018-JLB<br><br>**ORDER DENYING PLAINTIFF'S MERITS BRIEF**<br><br>**[ECF No. 18]** |

On January 2, 2023, Plaintiff Gerard C. ("Plaintiff") filed a Complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of a decision by the Commissioner of Social Security (the "Commissioner") denying his application for disability insurance benefits.[2]

---

[1]　Martin O'Malley, the current Acting Commissioner of Social Security, is automatically substituted as the defendant for Kilolo Kijakazi, the former Acting Commissioner of Social Security, pursuant to Federal Rule of Civil Procedure 25(d).

[2]　Although the Complaint also challenges a denial of supplemental security income under Title XVI of the Social Security Act, this appears to be an error as no such application or denial exist in the Administrative Record. (*Compare* ECF No. 1 ¶ 1 *with* ECF No. 13, Certified Administrative Record ("AR").)

1

(ECF No. 1.)  Before the Court is Plaintiff's merits brief.  (ECF No. 18.)  The Commissioner filed a brief in opposition (ECF No. 20),[3] and Plaintiff filed a reply (ECF No. 21).  For the reasons set forth herein, the Court **DENIES** Plaintiff's merits brief and **AFFIRMS** the decision of the Commissioner.

## I. PROCEDURAL BACKGROUND

On or about July 2, 2021, Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act, alleging disability beginning October 1, 2012 (AR 171–72, 173–84).  After his application was denied initially and upon reconsideration (AR 109–14, 116–21), Plaintiff requested an administrative hearing before an administrative law judge ("ALJ") (AR 123–37).  An administrative hearing was held on April 1, 2022.  (AR 33–52.)  Plaintiff appeared at the telephonic hearing with counsel, and testimony was taken from Plaintiff, as well as from a vocational expert ("VE").  (AR 33–52.)

As reflected in his August 1, 2022, hearing decision, the ALJ found that Plaintiff had not been under a disability, as defined in the Social Security Act, from his alleged onset date through the date of last insured.  (AR 14–32.)  The ALJ's decision became the final decision of the Commissioner on November 1, 2022, when the Appeals Council denied Plaintiff's request for review.  (AR 1–6.)  This timely civil action followed.

///
///
///

---

[3]     Despite the requirements set forth in the Court's briefing schedule, the Commissioner filed a cross-motion for summary judgment instead of an opposition.  (*Compare* ECF No. 14 at 2 ("The Commissioner shall file an opposition (not a cross-motion for summary judgment) . . . .") *with* ECF No. 20.)  The Court construes the Commissioner's cross-motion for summary judgment as his opposition to Plaintiff's merits brief.  *See* CivLR 7.1(e)(6)(e)(1); Fed. R. Civ. P. Suppl. R. Soc. Sec. 5 advisory committee's note to 2022 amendment.

## II. SUMMARY OF THE ALJ'S FINDINGS

In rendering his decision, the ALJ followed the Commissioner's five-step sequential evaluation process. *See* 20 C.F.R. § 404.1520. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 1, 2012, the alleged onset date, through December 31, 2017, the date of last insured ("DLI"). (AR 19.)

At step two, the ALJ found that that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, posttraumatic stress disorder ("PTSD"), depression, anxiety, and migraines. (AR 19.)

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity one of the impairments listed in the Commissioner's Listing of Impairments. (AR 20–21.)

Next, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") "to perform a range of light work" with the following additional limitations:

> [H]e was unable to climb ladders, ropes, or scaffolds. He was able to occasionally climb ramps and stairs. He was able to balance, stoop, kneel, crouch, and crawl. He was able to frequently reach overhead with the bilateral upper extremities. He was able to frequently handle and finger with the bilateral upper extremities. He needed to avoid concentrated exposure to extreme temperatures, vibration, pulmonary irritants and unprotected heights and dangerous moving machinery. He was able to understand, remember, and carry out simple job instructions and tasks (unskilled work). He was able to interact appropriately with coworkers and supervisors but unable to engage[] in teamwork or collaborative work. He was able to interact with the public [i]n a brief superficial incidental manner. He was able to respond appropriately to supervision, routine work situations and settings, and changes in a routine work setting or situation. He was able to appropriately make decision[s], ask questions, and use judgment.

(AR 22.)

For purposes of his step four determination, the ALJ determined that Plaintiff was unable to perform any past relevant work. (AR 27.)

The ALJ then proceeded to step five of the sequential evaluation process. Based on the VE's testimony that a hypothetical person with Plaintiff's vocational profile and RFC

could perform the requirements of occupations that existed in significant numbers in the national economy (*i.e.*, hand packager, sub assembler, and inspector), the ALJ found that Plaintiff was not disabled under the law from October 1, 2012, through December 31, 2017, the DLI. (AR 28–29.)

## III. PLAINTIFF'S CLAIMS OF ERROR

As reflected in Plaintiff's merits brief, the disputed issues that Plaintiff raises as grounds for reversal and remand are as follows:

1. Whether the ALJ improperly discounted the disability rating assigned to Plaintiff by the Department of Veteran Affairs (the "VA"). (ECF No. 18-1 at 10.)

2. Whether the ALJ improperly limited his review of Plaintiff's medical records to those dated before the DLI. (*Id.*)

3. Whether the ALJ improperly discounted Plaintiff's testimony regarding the severity of his symptoms. (*Id.*)

## IV. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether the Commissioner's findings are supported by substantial evidence and whether the proper legal standards were applied. *DeLorme v. Sullivan*, 924 F.2d 841, 846 (9th Cir. 1991). Substantial evidence means "more than a mere scintilla" but less than a preponderance. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Desrosiers v. Sec'y of Health & Hum. Servs.*, 846 F.2d 573, 575–76 (9th Cir. 1988). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. This Court must review the record as a whole and consider adverse as well as supporting evidence. *Green v. Heckler*, 803 F.2d 528, 530 (9th Cir. 1986). Where evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). In reaching his findings, the ALJ is entitled to draw inferences which logically flow from the evidence. *Id.* Finally, the Court may not reverse an ALJ's decision on account of an error that is harmless. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

## V. DISCUSSION

### A. The ALJ Did Not Err by Discounting Plaintiff's VA Disability Rating.

First, the Court turns to the issue of the ALJ's handling of the disability rating assigned to Plaintiff by the VA. In his opinion, the ALJ notes the one hundred percent service-connected disability rating assigned to Plaintiff by the VA but then explains that:

> the disability determination processes utilized by the VA and the Social Security Administration are fundamentally different. The VA does not make a function-by-function assessment of an individual's capabilities (*i.e.*, determine the claimant's residual functional capacity) or determine whether the claimant is able to perform either his past relevant work or other work that exists in significant numbers in the national economy as is required by the Regulations. Thus, a disability rating by the VA is of little probative value in these proceedings. Therefore, the undersigned finds the VA disability rating not persuasive.

(AR 27.)

Plaintiff argues that the ALJ erred in discounting the VA disability rating, asserting the "differences between the two programs cannot be the basis for rejecting the VA determination, as those differences exist in every case." (ECF No. 18-1 at 14 (citing *McCartey v. Massanari*, 298 F.3d 1072 (9th Cir. 2002)).) Rather, the ALJ "must explain why these differences are material in this case." (*Id.*) In opposition, the Commissioner argues that, under the regulations as revised in 2017, the ALJ was reasonable in finding the VA's determination unpersuasive. (ECF No. 20 at 10–11 (citing 20 C.F.R. § 404.1504).)

Since the filing of the parties' briefs, the Ninth Circuit has issued an opinion overturning *McCartey* as "clearly irreconcilable with the revised regulations." *See Kitchen v. Kijakazi*, 82 F.4th 732, 738–39 (9th Cir. 2023). As in *Kitchen*, Plaintiff filed his application for disability benefits after the March 27, 2017, effective date for the Social Security Administration's revised regulations regarding evaluation of medical evidence. Those regulations provide, in relevant part, that "'[d]ecisions by other governmental agencies,' including the VA, are 'inherently neither valuable [n]or persuasive,' and thus, an ALJ is not required to include any analysis about 'a decision made by any other

governmental agency.'" *Id.* at 738 (quoting 20 C.F.R. §§ 404.1504, 404.1520b(c)(1)). "Put simply, the 2017 regulations removed any requirement for an ALJ to discuss another agency's rating." *Id.* at 739.

Accordingly, the Court finds the ALJ did not err by determining Plaintiff's VA disability rating to be not persuasive. *See Kitchen*, 82 F.4th at 739 ("Thus, it was not error for the ALJ to exclude [the plaintiff's] VA disability rating from her analysis.").

### B. The Alleged Failure to Consider Plaintiff's Post-DLI VA Records Would Constitute Error.

Second, Plaintiff argues that the ALJ erred by failing to review the 644 pages of post-DLI records from the VA dating from May 2018 through September 2022, which would have established "ongoing progressive physical and mental impairments." (ECF No. 18–1 at 11–13.) Specifically, Plaintiff asserts these records would provide evidence of the severity of his migraines, damage to his cervical spine, and PTSD, including Plaintiff's fear of leaving his house, weekly panic attacks, and plan to commit suicide by jumping off a bridge. (*Id.* at 12.)

The Commissioner does not address whether the post-DLI VA records were reviewed by the ALJ. (ECF No. 20 at 10.) Rather, the Commissioner argues that there was a valid basis for the ALJ not to address post-DLI evidence. (*Id.* (citing *Turner v. Comm'r, Soc. Sec. Admin.*, 613 F.3d 1217, 1223–24 (9th Cir. 2010)).) Further, the Commissioner asserts that the ALJ considered all *relevant* evidence because none of the post-DLI records include retrospective opinions on Plaintiff's pre-DLI condition. (*Id.*)

The Court initially notes that it is not clear that the ALJ failed to review or to consider the post-DLI records. Plaintiff makes this allegation without citation. (*See* ECF No. 18-1 at 5, 10–11.) The ALJ received all of the records in evidence, including those from after the DLI. (AR 32, 35–36.) The ALJ never states that he did not review the records that post-date the DLI. On the contrary, although he does not cite to and expressly address medical records from after the DLI (other than the opinions of certain state agency consultants), the ALJ repeatedly states in his decision that he considered *all* the evidence.

(AR 18 ("After careful consideration of all the evidence"), 19 ("After careful consideration of the entire record"), 22 ("After careful consideration of the entire record").) Nonetheless, the Court will analyze whether any such failure, if it occurred, would constitute error and whether such error would be harmless.

Medical records are not rendered irrelevant solely because the records post-date a plaintiff's insured period. *See Smith v. Bowen*, 849 F.2d 1222, 1225 (9th Cir. 1988) ("[M]edical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis."); *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1232 (9th Cir. 2011) ("[T]his court has specifically held that medical evaluations made after the expiration of a claimant's insured status are relevant to an evaluation of the preexpiration condition."); *see also Carrillo v. Comm'r of Soc. Sec.*, No. 1:22-CV-00428-SAB, 2023 WL 5155866, at *8 (E.D. Cal. Aug. 10, 2023) (collecting cases). However, a retrospective opinion may be entitled to less weight than a contemporaneous one. *See Macri v. Chater*, 93 F.3d 540, 545 (9th Cir. 1996); *see also Carrillo*, 2023 WL 5155866, at *8 (collecting cases); *cf. Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) ("Where a claimant's condition becomes progressively worse, medical reports from an early phase of the disease are likely to be less probative than later reports.").

The Commissioner relies upon *Turner* for the proposition that "evidence being dated after the [DLI] provides a valid basis for the ALJ not to address it." (ECF No. 20 at 10 (citing *Turner*, 613 F.3d at 1223–24).) In *Turner*, the plaintiff argued the ALJ improperly rejected the findings of his treating physician, findings which the plaintiff argued were supported by a post-DLI report made by a social worker. *Turner*, 613 F.3d at 1222–23. With respect to the ALJ's treatment of the opinion of the social worker, the Ninth Circuit noted that the social worker was an "other source" under the then-applicable version of 20 C.F.R. § 404.1513(d)(3) (2010), and therefore the ALJ only had to give "germane" reasons for disregarding the lay testimony. *Id.* at 1223–24; *see also Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (identifying different "highly articulated" standards for rejecting different types of testimony). The Ninth Circuit noted and endorsed

three germane reasons identified by the ALJ for disregarding the testimony. *Id.* at 1224. One of these was that the social worker's report, as opposed to that of the treating physician, did not reflect an examination during "the 'actual period at issue, between the alleged onset date . . . and the date last insured . . . .'" *Id.*

The Court finds the Commissioner's expansive reading of *Turner* unfounded considering the context. First, the issue of whether an ALJ can fail to address evidence for the sole reason that it is dated post-DLI was not before the *Turner* court. *Cf. Smith*, 849 F.2d at 1223 ("[The plaintiff] contends that the Appeals Council erred [when] it ignored evidence establishing his earlier disability from physicians who treated [the plaintiff] after 1976, [the DLI] . . . ."), 1225 ("We think it is clear that reports containing observations made after the period for disability are relevant to assess the claimant's disability. It is obvious that medical reports are inevitably rendered retrospectively and should not be disregarded solely on that basis.") (citations omitted). Second, the post-DLI records at issue in this case include both nonmedical sources and medical sources, including Plaintiff's treating clinical psychologist and a certified nurse practitioner. *See* 20 C.F.R. § 404.1502(a). Even applying *Turner* broadly to mean that an opinion from a nonmedical source may be disregarded solely due to being dated post-DLI, *Turner* does not say that evidence from acceptable medical sources can be ignored solely for being dated post-DLI, as is, in part, the case here.

The Commissioner also argues that none of the post-DLI records are relevant as none are retrospectively opining on Plaintiff's pre-DLI condition. However, the ALJ found Plaintiff's degenerative disc disease of the lumbar spine, PTSD, depression, anxiety, and migraines to be severe impairments—all of which are conditions at least referenced in the post-DLI VA records. (*See* AR 930–32 (depression, PTSD), 935 (migraine, past suicidal ideation), 940 (past suicidal ideation), 962 (anxiety, PTSD), 972–73 (migraines, depression, anxiety, PTSD, past suicidal ideation), 981 (back pain, migraines, depression, anxiety, PTSD), 990 (back pain), 1013 (current passive suicidal ideation), 1021 (depression), 1036–37 (back pain), 1041–42 (back pain, depression, anxiety, PTSD, past

passive suicidal ideation), 1055–57 (back pain, migraines, depression, anxiety, PTSD), 1061 (back pain), 1073 (anxiety, PTSD), 1075 (anxiety, PTSD), 1076–77 (past suicidal ideation), 1102 (PTSD, past suicidal ideation), 1108–09 (PTSD), 1111–13 (depression, anxiety, PTSD, past suicidal ideation), 1123 (PTSD), 1136 (anxiety), 1143–45 (depression, anxiety, PTSD), 1153 (migraines), 1168 (depression, anxiety, PTSD), 1173–76 (depression, anxiety, PTSD), 1178 (depression, anxiety, PTSD), 1182 (migraines), 1185–86 (depression, anxiety, PTSD), 1188–89 (depression, anxiety, PTSD), 1191–92 (depression, anxiety, PTSD), 1196 (anxiety), 1205–06 (depression, anxiety, PTSD), 1210–11 (depression, anxiety, PTSD), 1215 (anxiety), 1223–24 (past suicidal ideation), 1239 (anxiety), 1252 (back pain, migraines), 1254–57 (depression, anxiety, PTSD, past suicidal ideation), 1258–60 (back pain, degenerative disc disease), 1268–69 (depression, anxiety, PTSD), 1271–75 (depression, anxiety, PTSD), 1283 (depression, anxiety, PTSD), 1285 (back pain, migraines, depression, anxiety, PTSD), 1288 (past suicidal ideation), 1301–04 (depression, anxiety, PTSD), 1312–16 (back pain, migraines, depression, anxiety, PTSD, past suicidal ideation), 1318 (depression, anxiety, PTSD), 1320–23 (depression, anxiety, PTSD, past suicidal ideation), 1333–36 (anxiety, past suicidal ideation), 1386–89 (migraines, degenerative disc disease), 1407 (back pain), 1409 (back pain), 1411–12 (degenerative disc disease, back pain), 1453 (depression, anxiety, PTSD), 1455–58 (back pain, migraines, depression, anxiety, PTSD, past suicidal ideation), 1468–72 (back pain, migraines, depression, anxiety, PTSD, past suicidal ideation), 1480 (back pain), 1482–86 (back pain, migraines, depression, anxiety, PTSD, past suicidal ideation), 1491–92 (back pain), 1497 (depression, anxiety, PTSD), 1506 (back pain), 1508 (back pain), 1511 (pain, migraines, depression), 1514–15 (back pain, depression, anxiety, PTSD, past suicidal ideation), 1521–27 (back pain, migraines, depression, anxiety, PTSD, past suicidal ideation), 1532 (back pain), 1539 (back pain), 1542 (degenerative disc disease), 1548 (depression, anxiety, PTSD), 1555–59 (back pain, migraines, depression, anxiety, PTSD).

Accordingly, the Court finds that if the ALJ failed to review and consider post-DLI records, it would constitute error.

### C. Any Error With Respect to the Post-DLI Records Was Harmless.

However, "[e]ven when the ALJ commits legal error, we uphold the decision where that error is harmless." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). An ALJ's error is harmless where it is "inconsequential to the ultimate nondisability determination." *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). The plaintiff bears the burden of demonstrating how the ALJ's error prejudiced him. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded by statute on other grounds* ("The burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.") (internal punctuation and citation omitted).

In arguing the error was harmful, Plaintiff provides evidence from the post-DLI records that Plaintiff "has progressive signs of PTSD," because "[h]e reports being afraid to leave his house, [being] unmotivated for weeks at a time with panic attacks that last five to ten minutes once a week[,] . . . creat[ing] a plan to jump off the bridge[,] call[ing] the veterans crisis line[, and] ha[ving] difficulty talking." (ECF No. 18-1 at 12.) Finally, Plaintiff cites that he "receives treatment from the VA and takes medication," both of which "directly contradict[] the ALJ's findings that [Plaintiff] has not had signs of PTSD and has not received treatment."[4] (*Id.* (citing AR 22).)

---

[4] Despite his initial conclusory statement that the allegedly unaddressed post-DLI records "provide evidence of the severity of [Plaintiff's] migraines, post-traumatic stress disorder, and damage to his cervical spine," Plaintiff's brief is devoid of evidence or analysis regarding migraines or degenerative disc disease. As such, Plaintiff has failed to carry his burden in demonstrating how the alleged error was harmful. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("We do not address this finding because [the plaintiff] failed to argue this issue with any specificity in his briefing."); *see also Linda G. v. Comm'r of Soc. Sec.*, No. C20-1514-MLP, 2021 WL 3124511, at *4 (W.D. Wash. July 23, 2021) ("[C]onclusory arguments made without elaboration, explanation, or citation to supportive evidence are insufficient to establish the ALJ harmfully erred and are accordingly rejected."). Further, a review of the post-DLI records shows that Plaintiff's treatment for back pain in that period was attributable to a

                      *1.      Evidence of Anxiety and Panic Attacks*

First, Plaintiff states the allegedly unaddressed records would show Plaintiff is afraid to leave his house, has difficulty engaging in conversations, and has weekly panic attacks. However, Plaintiff reported similar symptoms of feeling anxious in social situations, engaging in avoidance behaviors to prevent social anxiety, and suffering from panic attacks throughout the records within the insured period. For example, within the insurance period, Plaintiff reported panic attacks ranging from at most once weekly to once every three weeks. (AR 438 (1 attack/3 weeks), 461 (1 attack/2 weeks), 502 ("weekly or less often"), 584 ("weekly or less often"), 677 ("weekly or less often"), 800 ("weekly or less often").) Plaintiff reported his panic attacks can be triggered by "congested," "busy" or "high traffic" environments, large groups, standing in lines at a store, driving on busy roads, overthinking, high stress, and loud noises. (AR 438, 461, 490, 501–02, 608, 614, 676–77, 839, 847–48.) Plaintiff repeatedly asserted "belie[f that] these panic attacks keep him from leaving his home," (AR 461, 490, 614, 847), and endorsed avoidance as a coping strategy (AR 424, 451–52, 470, 482, 501, 608–09, 676–77, 839).

Additionally, despite the three examples Plaintiff identifies, post-DLI records do not reflect as a whole progressive deterioration due to anxiety and panic attacks. For example, in September 2019, Plaintiff reported experiencing one to two panic attacks a week; however, in January and February of 2020, Plaintiff reported decreasing frequency of attacks. (*Compare* AR 1042 (1–2 attacks/week) *with* 962 ("weekly") *and* 995 ("denies panic attacks").) In March and May 2020, Plaintiff did not report currently experiencing panic attacks but rather discussed his fear of and attempts to avoid triggering attacks. (*See* AR 1302, 1333.) By December 2020, Plaintiff "report[ed] panic symptoms have improved, as ha[d] his ability to tolerate trauma memories." (AR 1176.)

---

motor vehicle accident, with an onset date of February 28, 2020, not to the degenerative disc disease that was a basis for Plaintiff's disability claim. (*See, e.g.*, AR 1258–60, 1386–89, 1409, 1412, 1480, 1491–92, 1508, 1521–22, 1531–32, 1539–43, 1555, 1558–59.)

Similarly, the post-DLI records from March 31, 2020, through February 4, 2022, reflect that despite feeling anxiety, Plaintiff was leaving his house daily, he was able to go to appointments and get groceries, he attended an event in downtown with more than one hundred people, and at points his anxiety had "tapered off" such that he was "[n]ot getting as overwhelmed." (AR 1251, 1269, 1285, 1312–13, 1455, 1468, 1482, 1548.)  In fact, by December 2020, Plaintiff reported that his ongoing anxiety was "less pronounced," and that he has "improved [his] ability to be in public and around friends and family." (AR 1176.)  In his opinion, the ALJ relied upon similar evidence of improved panic attacks, decreased anxiety, and Plaintiff's ability to independently manage all activities of daily living, including in social interactions.  (AR 24–25.)

Furthermore, the records from both within and beyond the insured period demonstrate improvement of Plaintiff's anxiety and panic attacks with medication and therapy.  (*Compare* AR 424, 438, 582, 798 *with* 1176, 1269, 1289, 1455, 1468.)  The ALJ relied upon evidence that Plaintiff improved with medication and other treatment in discounting Plaintiff's symptom testimony.  (AR 24.)

Accordingly, the Court finds that Plaintiff fails to meet his burden of demonstrating that the ALJ's alleged failure to address evidence of Plaintiff's anxiety and panic attacks in the post-DLI VA records was harmful error.

### 2. Evidence of Depression and Suicidal Ideation

Second, Plaintiff states the allegedly unaddressed records reflect Plaintiff created a plan to jump off a bridge, called the veterans crisis line, and was unmotivated for weeks at a time, demonstrating that his depression symptoms worsened.  The singular incident of active suicidal ideation occurred in December 2017 and was documented in records prior to May 2018. (*See* AR 836 ("Currently denies S[uicidal] I[deation] but in Dec 2017 was driving around looking for bridges to drive off in TX. 'I had one picked out.  I was talking myself down from doing it.  If I did it, it would be a ticket to hell.' R[easons] F[or] L[iving]: family and God.  Has not researched bridges in SD.  Is not stockpiling pills or researching ways to die on the internet.  Denies hx of suicide attempts."), 1112 (same).)

|   |   |
|---|---|
| 1 | Despite this one instance of active suicidal ideation, Plaintiff consistently, "convincingly," and "strongly" denied current active and passive suicidal ideation throughout the entire record. (*See* AR 348–51, 353, 356, 359, 360–61, 363–64, 370–71, 373–74, 378, 381–82, 387, 390–91, 394–96, 398, 403, 406, 408–09, 414–15, 417–25, 428–29, 431, 433–35, 440, 443–46, 448, 451, 455–56, 459, 461, 469, 473, 475–77, 479, 482–83, 488–89, 491, 502, 608, 610, 613, 615, 677, 812–13, 836, 838, 841, 845, 849, 935, 939–40, 985, 996–97, 999, 1017–20, 1041–42, 1047, 1049, 1070, 1075, 1112–13, 1223, 1253, 1255, 1287–89, 1314–16, 1349, 1453, 1458, 1471, 1485–86, 1497, 1513–14, 1525, 1559.) In fact, notwithstanding "occasionally" experiencing "fleeting" passive suicidal ideation (AR 1013, 1223, 1254, 1257, 1336–37, 1444, 1526), Plaintiff was considered a low suicide risk in both acute and chronic terms, all but twice (*compare* AR 381–82, 459–60, 475–76, 488, 971, 999, 1020, 1049, 1223–24, 1254 (low) *with* 835–37 (moderate), 1347–49 (moderate to low; resolved to low within 24 hours)). |

Despite this one instance of active suicidal ideation, Plaintiff consistently, "convincingly," and "strongly" denied current active and passive suicidal ideation throughout the entire record. (*See* AR 348–51, 353, 356, 359, 360–61, 363–64, 370–71, 373–74, 378, 381–82, 387, 390–91, 394–96, 398, 403, 406, 408–09, 414–15, 417–25, 428–29, 431, 433–35, 440, 443–46, 448, 451, 455–56, 459, 461, 469, 473, 475–77, 479, 482–83, 488–89, 491, 502, 608, 610, 613, 615, 677, 812–13, 836, 838, 841, 845, 849, 935, 939–40, 985, 996–97, 999, 1017–20, 1041–42, 1047, 1049, 1070, 1075, 1112–13, 1223, 1253, 1255, 1287–89, 1314–16, 1349, 1453, 1458, 1471, 1485–86, 1497, 1513–14, 1525, 1559.) In fact, notwithstanding "occasionally" experiencing "fleeting" passive suicidal ideation (AR 1013, 1223, 1254, 1257, 1336–37, 1444, 1526), Plaintiff was considered a low suicide risk in both acute and chronic terms, all but twice (*compare* AR 381–82, 459–60, 475–76, 488, 971, 999, 1020, 1049, 1223–24, 1254 (low) *with* 835–37 (moderate), 1347–49 (moderate to low; resolved to low within 24 hours)).

Additionally, the post-DLI records demonstrate that Plaintiff's suicidality improved with treatment over time. In a January 2019 VA telehealth psychotherapy session, Plaintiff reported that he was "no longer experiencing S[uicidal] I[deation]" and felt "confident [he] [was] able to handle things." (AR 1102.) In a February 2020 telehealth psychotherapy session, Plaintiff "denied suicidal intent, plan, gestures, or attempts since [December 2017], stating that he infrequently experiences fleeting thoughts but copes by changing the subject, letting friends know he is having a moment, or listening to music." (AR 973.) In a July 2020 consultation, Plaintiff reported that "additional VA help 'changed his perspective.' He state[d] his safety plan is on his refrigerator, and he would utilize it if needed, and would contact emergency resources if feeling actively suicidal." (AR 1257.)

Further, the pre-DLI evidence extensively documents Plaintiff's mental health struggles with depression and encapsulates similar findings as those in the allegedly unreviewed post-DLI records. From 2012 through 2017—though most regularly between 2016 and 2017—providers frequently assessed Plaintiff's depression using the PHQ-9

scale.[5] (*See* AR 353–54, 356, 359, 361, 363–64, 370, 373, 377, 387, 391, 395–98, 403, 406–08, 414–15, 417, 428, 434–35, 443, 445, 453, 464, 471, 477, 495, 520, 541, 581, 618–19, 631, 634, 637, 639, 644, 646, 648–49, 652–54, 797, 854, 860, 864, 867, 870, 876, 878, 880, 882, 885–87.) Out of the twenty-nine times Plaintiff was assessed, Plaintiff's depression was rated as "moderate" twenty-two instances and as "mild" six instances. (*Compare* AR 353–54, 356, 361, 370, 373, 377, 387, 391, 395–98, 403, 406, 408, 414–15, 417, 428, 434–35, 443, 445, 453, 464, 471, 477, 495, 541, 581, 618–19, 631, 634, 639, 649, 652–54, 797, 854, 860, 864, 870, 882, 885–87 *with* AR 363–64, 397, 403, 406–08, 637, 644, 646, 648, 867, 876, 878, 880.) Similarly, in post-DLI records from November 2019 through December 2020, providers assessed Plaintiff's depression using the PHQ-9 scale seventeen times. For a little more than a year, Plaintiff's depression vacillated between "mild," (3 instances, all the most recent records), "moderate" (9 instances), and "moderately severe" (5 instances, corresponding with the COVID-19 crisis). (*Compare* AR 1272, 1274, 1283 *with* 973, 1021, 1175, 1188, 1268, 1271, 1301, 1303, 1318 *and with* 918, 930, 1175, 1188, 1205, 1320–21.)

Thus, the instant case is distinguishable from *Smith*, where the post-DLI records filled in significant and material gaps in the pre-DLI medical records. *See Smith*, 849 F.2d at 1224–26. In reviewing the record as a whole, here, the Court finds that (1) substantial evidence supports the ALJ's findings, (2) the post-DLI records are overall consistent with

---

[5] "The Patient Health Questionnaire known as the 'PHQ-9' 'is a[n] instrument for making criteria-based diagnoses of depressive and other mental disorders commonly encountered in primary care.'" *Norman v. Berryhill*, No. 17-CV-04108-SI, 2018 WL 4519952, at *2, n.3 (N.D. Cal. Sept. 19, 2018) (quoting Kurt Kroenke, MD, et al., *The PHQ-9: Validity of a Brief Depression Severity Measure*, 16 J. Gen. Intern. Med. 606 (2001)). PHQ-9 scores are generally interpreted as follows: 0–4 indicates minimal depression; 5–9 mild depression; 10–14 moderate depression; 15–19 moderately severe depression; and 20–27 severe depression. (*See* AR 930.) *See also Salina S. v. Kijakazi*, No. 1:20-CV-00515-REP, 2022 WL 3700880, at *5, n.4 (D. Idaho Aug. 25, 2022) (citing Kroenke, *supra*.).

the records Plaintiff acknowledges were reviewed, and (3) Plaintiff fails to meet his burden of demonstrating that evidence of Plaintiff's anxiety and panic attacks would have been consequential to the disability determination such that the ALJ's alleged failure to address the post-DLI records would constitute harmful error.

### 3. Evidence of Treatment

Finally, Plaintiff cites that he "receives treatment from the VA and takes medication," both of which "directly contradict[] the ALJ's findings that [Plaintiff] has not had signs of PTSD and has not received treatment." (ECF No. 18-1 at 12 (citing AR 22).) The section of the ALJ's opinion to which Plaintiff cites is the ALJ's step three determination that neither Plaintiff's impairments nor the combination thereof meets or medically equals one of the impairments listed in the Commissioner's Listing of Impairments.[6] (AR 20–22.) The relevant portion of the ALJ's opinion reads:

> The undersigned has also considered whether the "paragraph C" criteria are satisfied. In this case, the evidence fails to establish the presence of the "paragraph C" criteria. The claimant's mental impairments have not resulted in medical treatment, mental health therapy, psychosocial supports, or highly structured settings that is ongoing and that diminishes the symptoms and signs

---

[6] "The listings describe impairments that are considered to be severe enough to prevent an individual from doing any gainful activity." *Kitchen*, 82 F.4th at 741. The claimant bears the burden of establishing the existence of a severe impairment and, ultimately, disability. *See Tidwell v. Apfel*, 161 F.3d 599, 601 (9th Cir. 1998). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria." *Kitchen*, 82 F.4th at 741 (emphasis in original); *see also* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.15(A)–(C) (providing the requirements for "trauma- and stressor-related disorders[,] satisfied by A and B, or A and C"). To satisfy the paragraph C criteria, a claimant's mental disorder must be "serious and persistent," meaning it has been medically documented for at least two years, and the claimant must provide evidence of both (C1) "medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) . . . that is ongoing and . . . diminishes the symptoms and signs of [the claimant's] mental disorder," and (C2) "marginal adjustment," meaning the claimant has "minimal capacity to adapt to changes in [his] environment or to demands that are not already part of [his] daily life." 20 C.F.R. § Pt. 404, Subpt. P, App. 1 §§ 12.00A2c, 12.00G2b–c.

of the claimant's mental disorder; and minimal capacity to adapt to changes in the environment or to demands that are not already part of the daily life.

(AR 22.)

Neither before the ALJ nor in the briefing before the Court has Plaintiff asserted that his PTSD should qualify under Listing 12.15.[7] (*See generally* ECF Nos. 18; 21; AR 21, 257–60.) Instead, Plaintiff's argument before the Court seems to be that (1) the ALJ found Plaintiff "has not had signs of PTSD and has not received treatment" and (2) this finding is undermined by the post-DLI records the ALJ did not address, thus resulting in harmful error. (ECF No. 18-1 at 12–13.)

The Court interprets the above-cited paragraph not as the ALJ's analysis, but rather his conclusion, which includes, in the negative, a statement of the legal standard for the listing. *See, e.g.*, *Tahnee M. v. Kijakazi*, No. 22-CV-00257-BEN-JLB, 2023 WL 4624698, at *21 (S.D. Cal. July 19, 2023). In other words, the Court does not agree with Plaintiff that the ALJ made a finding that Plaintiff has not received medical treatment or mental health therapy for his PTSD. Rather, the ALJ found Plaintiff's impairment has not both resulted in ongoing medical treatment, etc., that diminishes the symptoms of the disorder *and* resulted in "minimal capacity to adapt to changes in the environment or to demands that are not already part of the daily life." *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.00G2b–c. In fact, Plaintiff's position that the ALJ found Plaintiff has no signs of PTSD and has not received treatment for it would be entirely inconsistent with the ALJ's determination that PTSD is a severe impairment in this case.

---

[7]  Although not raised, the Court independently reviewed the ALJ's analysis of the paragraph C criteria (AR 21, 24, 26) and finds no error. *See Guerra v. Astrue*, No. EDCV 09-02274-MAN, 2010 WL 5088774, at *6 (C.D. Cal. Dec. 7, 2010) ("An ALJ's lack of formal analysis and findings at Step Three . . . will not constitute reversible error when: the ALJ's subsequent discussion of the relevant medical evidence supports a conclusory finding; and with respect to equivalency, [the] plaintiff fails to proffer a theory or evidence showing that his combined impairments equal a Listing.").

Because Plaintiff's premise—that the ALJ found Plaintiff "has not had signs of PTSD and has not received treatment"—is not correct, the Court cannot find that the ALJ erred in making that finding.

### 4. Conclusion

Considering Plaintiff's arguments and the record as a whole, the Court finds that any failure of the ALJ to address the post-DLI records would be harmless error. *See William M. v. Comm'r of Soc. Sec.*, No. 3:17-CV-00536-PK, 2018 WL 3146595, at *8 (D. Or. June 27, 2018), *aff'd sub nom. Mullen v. Saul*, 830 F. App'x. 245 (9th Cir. 2020) ("In short, Plaintiff suggests a nebulous alternative interpretation of the record but fails to show how the post–DLI evidence rebuts the ALJ's findings.").

### D. Any Alleged Error Regarding the ALJ's Evaluation of Plaintiff's Subjective Symptom Testimony Is Similarly Harmless.

Finally, the Court turns to the issue of whether the ALJ appropriately evaluated Plaintiff's testimony. The ALJ discounted Plaintiff's subjective symptom testimony because it was inconsistent with the record, including evidence and medical opinions reflecting only mild and moderate mental limitations, Plaintiff's demonstrated improvement through conservative treatment, and Plaintiff's self-reporting of improved symptoms. (AR 23–24.)

Plaintiff argues that the ALJ erred because, in discounting Plaintiff's symptom testimony, he did not consider the post-DLI VA records from May 2018 through September 2022. (ECF No. 18-1 at 15 ("The ALJ's analysis only pertains to the records from 2012 to 2017. [Plaintiff's] statements are from 2019 and at the hearing in 2022. Those statements pertain to the present time period and are documented in records that were not reviewed.").) Plaintiff alleges the ALJ did not consider the post-DLI VA records, and because of that, "the ALJ did not provide an accurate analysis," and thus his "findings are not supported by substantial evidence." (*Id.*) Plaintiff does not support his assertion that the ALJ did not consider the post-DLI VA records, nor does Plaintiff identify what evidence the ALJ overlooked that would undermine the reasons provided.

In response, the Commissioner asserts that the ALJ's evaluation of Plaintiff's testimony was supported by substantial evidence. (ECF No. 20 at 7–10.) Specifically, the Commissioner provides evidence in support of the ALJ's findings that Plaintiff's testimony was inconsistent with the medical evidence, inconsistent with the conservative treatment Plaintiff received, and inconsistent with his activities of daily living. (*Id.*)

Plaintiff does not allege nor otherwise address, either in his initial merits brief or in his reply, that the ALJ committed a legal error in his reasoning or analysis beyond allegedly failing to review post-DLI records. As discussed above, to the extent Plaintiff's challenge rests exclusively on the ALJ's alleged failure to address post-DLI records, the ALJ's findings were supported by substantial evidence from the entire record and Plaintiff fails to point to anything that would negate the validity of the ALJ's ultimate conclusion. *See Molina*, 674 F.3d at 1115 (citing *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)). As Plaintiff does not challenge any other aspect of the ALJ's evaluation of Plaintiff's symptom testimony, he has failed to demonstrate an error, let alone a harmful one. *See Molina*, 674 F.3d at 1111.

Accordingly, the Court upholds the ALJ's evaluation of Plaintiff's symptom testimony.

## VI. CONCLUSION

For the reasons set forth above, the Court **DENIES** Plaintiff's merits brief and **AFFIRMS** the decision of the Commissioner. The Clerk is directed to enter judgment affirming the decision of the Commissioner and dismissing this action with prejudice.

**IT IS SO ORDERED.**

Dated: March 25, 2024

Hon. Jill L. Burkhardt
United States Magistrate Judge